(612 P.2d 1250)
No. 50,721

PAT BARNETT, *Plaintiff-Appellant,* v. PEGGY CROSBY, *Defendant,* and AID INSURANCE COMPANY, *Defendant-Appellee.*

Opinion filed June 27, 1980.

*Donald E. Shultz,* of Shultz, Shultz & Tedford, P.A., of Dodge City, for the appellant.

*B. G. Larson,* of Williams, Larson, Voss, Strobel & Estes, of Dodge City, for the appellee AID Insurance Company.

Before SPENCER, P.J., ABBOTT and PARKS, JJ.

PARKS, J.: This is an appeal by the plaintiff Pat Barnett from an order granting summary judgment to the defendant AID Insurance Company on an uninsured motorist claim.

The facts are not in dispute. On March 7, 1977, plaintiff was injured when a car driven by defendant Peggy Crosby struck the motorcycle Barnett was riding. Neither Crosby nor her car were insured. Barnett's motorcycle and his family car were both insured—the car by AID and the motorcycle by Midwest Mutual Insurance Company—but only the policy carried by AID on the car included uninsured motorist coverage.

Barnett brought suit against both Crosby and AID, seeking judgment in excess of $10,000. AID moved for summary judgment claiming that it had no duty to defend or to pay any

judgment because: (1) its policy only provided liability coverage for Barnett's car, and (2) the uninsured motorist coverage excluded injuries arising as a result of occupying a vehicle (other than the insured vehicle) which is owned by the named insured. The trial court upheld the policy exclusion, granted summary judgment and dismissed AID as a defendant. The court then discharged the jury, received plaintiff's offer of proof and stipulation, and returned a judgment against Crosby for the amount of damages agreed to by Barnett and Crosby. Plaintiff now appeals the trial court's ruling upholding the validity and application of the uninsured motorist coverage exclusion.

The offer of uninsured motorist coverage to policyholders is mandatory under K.S.A. 40-284. Furthermore, any provisions of the insurance policy which purport to condition, limit or dilute the unqualified uninsured motorist coverage mandated by the statute are void and unenforceable. *Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. 595, 607, 549 P.2d 1354 (1976); *Clayton v. Alliance Mutual Casualty Co.,* 212 Kan. 640, Syl. ¶ 1, 512 P.2d 507 (1973).

The exclusion relied on by AID has been considered previously. *Forrester v. State Farm Mutual Automobile Ins. Co.,* 213 Kan. 442, 517 P.2d 173 (1973); *Midwest Mutual Ins. Co. v. Farmers Ins. Co.,* 3 Kan. App. 2d 630, 599 P.2d 1021 (1979), *rev. denied* 227 Kan. 927 (1980). In *Midwest Mutual* it was held:

"Uninsured motorist coverage protects the named insured wherever he may be, whether in the described vehicle, another 'owned' vehicle, a non-owned vehicle, or on foot." Syl. ¶ 3.

Therefore, since the mandatory uninsured motorist statute (K.S.A. 40-284) requires protection of the insured wherever he may be (*Midwest Mutual*), it is apparent that the AID exclusion clause is an attempt to dilute this mandated coverage and consequently is void.

The fact that Barnett rejected the extension of uninsured motorist coverage in his motorcycle policy with Midwest Mutual Insurance Company does not change the liability of AID under its uninsured motorist provision. Barnett paid an additional premium to insure himself against the eventuality of colliding with an uninsured motorist and should receive the benefits for which he paid. While it is true that Barnett could have stacked coverage to avoid sustaining damages in excess of the limits of a single

policy (*Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. at 608), he chose, as was his right, to avail himself of the protection he had purchased from AID.

In view of the *Midwest Mutual* decision, we conclude that the trial court erred in granting summary judgment in favor of AID. Accordingly, this case must be reversed.

The final issue relates to whether AID is bound by the damages awarded in the judgment against its codefendant, Peggy Crosby. We hold that AID is not bound by that judgment.

The summary judgment granted AID had the effect of releasing it from any further responsibility to defend the lawsuit. The fact that AID's counsel remained in the courtroom does not mean that AID was or could have been involved in the subsequent proceedings against Crosby. Once summary judgment was granted, AID was neither a privy nor a party to the judgment against Crosby. With respect to persons in whose favor or against whom the doctrine of res judicata is applicable, a former adjudication is binding only on parties in the proceedings in which it is rendered and their privies. *Adamson v. Hill,* 202 Kan. 482, 488, 449 P.2d 536 (1969).

The conclusion that AID should not be bound by the prior determination of liability is also supported by *Clayton,* 212 Kan. at 652. There the principal defendant defaulted while the insurance company, Alliance, sought time to prepare legal argument concerning its contractual liability. The trial court excused Alliance from the default hearing and stated that the ruling on liability was limited to the codefendant, Bedore. The trial court entered judgment against Bedore and held that Alliance was bound by the previous determination of damages. The Supreme Court reversed and held that Alliance was not collaterally estopped from challenging the damage judgment. The reason for not imposing collateral estoppel in this case is even greater because AID was granted judgment *before* any determination of liability was made and would have no cause to defend the suit further.

We reverse and remand this case to the district court for trial on the issue of liability of AID Insurance Company.