**Ben E. GENTRY and Laura Lee Gentry, Appellants,**

v.

**Keith H. WISE, Defendant,**

**and Chrysler Insurance Company, Appellee.**

No. 94–957.

Supreme Court of Iowa.

Sept. 20, 1995.

Randall J. Shanks, Council Bluffs, for appellants.

Jacob J. Peters of Peters Law Firm, P.C., Council Bluffs, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, LAVORATO and SNELL, JJ.

McGIVERIN, Chief Justice.

This case presents the question of the enforceability of a set-off clause in defendant Chrysler Insurance Company's uninsured motorist policy which Chrysler says authorizes a reduction in coverage for past and future social security disability benefits that insured, plaintiff Ben E. Gentry, has received and will receive in the future. The district court enforced the set-off clause. We agree that the clause is enforceable but only to the extent that the social security disability benefits are attributable to injuries plaintiff sustained in a certain automobile accident and thus "duplicative" of the uninsurance coverage. Accordingly, we modify and affirm the district court's order and remand for a determination of which social security disability benefits, if any, are duplicative of Chrysler's uninsurance coverage.

I. *Background facts and proceedings.* This interlocutory appeal arises out of a coverage dispute between the insured, plaintiff Ben E. Gentry, and the insurer, defendant Chrysler Insurance Company (Chrysler), under Chrysler's uninsured motorist policy.

A. *Events leading to present action.* Plaintiff Gentry made a claim against Chrysler for severe injuries he suffered as a result of his involvement in an automobile accident on February 1, 1991. The accident occurred when Keith H. Wise negligently drove his vehicle into the vehicle Gentry was driving. The vehicle Gentry was driving was owned by his employer, Bluffs Dodge, Inc. (Bluffs), and insured by defendant Chrysler.

At the time of the collision, Wise had no insurance covering his liability.

Gentry, however, had several forms of insurance and benefits available. Because he was in the course and scope of his employment at the time of the accident, he had workers' compensation insurance coverage from his employer, Bluffs. He ultimately received $266,394 as a settlement of his workers' compensation claim.

In addition to workers' compensation insurance, Gentry also qualified for social security disability benefits. The social security administration granted him social security disability payments based upon the primary diagnosis of fractures of his hip, pelvis, left arm, and left leg, which were injuries from the automobile accident; and a secondary diagnosis of coronary artery disease, which was a problem unrelated to the accident.[1] He began receiving social security disability benefits on July 1, 1991, in the sum of $340 per month. After Gentry settled his workers' compensation claim, the social security disability benefits were increased to $899 per month effective, January 3, 1994. He will continue to receive the benefits until he reaches age 62.

B. *Present action and adjudication of law points.* Gentry was also an insured under the Chrysler motor vehicle liability policy which Chrysler provided for Gentry's employer, Bluffs. Chrysler's liability policy provided uninsured motorist coverage to a limit of $350,000, subject to reduction of coverage for "[a]ll sums paid or payable under any workers' compensation, disability benefits or similar law."

Relying on this policy, Gentry claimed a right to uninsured motorist benefits from Chrysler, less the amount of workers' compensation benefits he had received. After Chrysler refused his claim, he and his wife, Laura Lee Gentry, filed the present action against Chrysler. Gentrys initially included Wise as a defendant in the suit, but Wise ultimately made a restitution payment to Gentry in the amount of $2,000.

After filing an answer to the petition, Chrysler filed an application for adjudication of law points, *see* Iowa R.Civ.P. 105, requesting that the district court find that its policy language entitled it to a reduction in its coverage for workers' compensation benefits ($266,394), responsible party payments ($2,000), and social security disability payments received (currently $899 per month) and to be received in the future by Gentry. Plaintiff's resistance denied that Gentry's social security disability benefits should be deducted from Chrysler's uninsured motorist coverage liability.

In ruling on the law points application, the court decided that Chrysler was entitled to a credit for past and future disability benefits Gentry has been granted from the social security administration, as well as for the workers' compensation and restitution received.

Gentry applied for permission to take an appeal in advance of the final judgment, *see* Iowa R.App.P. 2(a), and we granted the interlocutory appeal. On appeal, Gentry does not contest Chrysler's deduction from the uninsured motorist coverage of the workers' compensation and restitution payments.

Therefore, the sole issue presented is whether the district court correctly allowed Chrysler a credit on the uninsured motorist coverage for Gentry's past and future social security disability benefits.[2]

We review the issue for errors at law. *Continental W. Ins. Co. v. Krebill,* 492 N.W.2d 405, 406 (Iowa 1992) (citing Iowa R.App.P. 4).

II. *Applicable policy provisions and law.* The set-off clause in Chrysler's uninsured motorist policy provides:

**A. COVERAGE**

1. We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle."

. . . .

**C. EXCLUSIONS**

This insurance does not apply to any of the following:

. . . .

---

1. Approximately nine weeks prior to the automobile collision of February 1, 1991, plaintiff Gentry underwent heart surgery. In approximately 1989, he had his right knee replaced.

2. Plaintiff Laura Lee Gentry, the spouse of plaintiff Ben E. Gentry, also made a claim for loss of consortium against Chrysler, but her claim is not at issue in this appeal. Neither the district court nor the parties in this appeal addressed her claim. Accordingly, we will consider only the claim of plaintiff Ben E. Gentry in this opinion.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

. . . .

### D. LIMIT OF INSURANCE

1. ... [T]he most we will pay for all damages resulting from any one "accident" is the LIMIT OF INSURANCE for UNINSURED ... MOTORISTS COVERAGE....

2. Any amount payable under this coverage *shall be reduced by:*

    **a.** *All sums paid or payable under any workers' compensation, disability benefits or similar law,* and

    **b.** All sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY COVERAGE.

(Emphasis added.)

■ In construing this provision of Chrysler's uninsured motorist policy, we recognize Iowa Code section 516A.2 (1991)[3] forms a basic part of the policy and is treated as if it had actually been written into the policy. *Tri–State Ins. Co. v. De Gooyer*, 379 N.W.2d 16, 17 (Iowa 1985). Section 516A.2, second sentence, permits an insurer to write exclusions and limitations into an auto policy relating to uninsured coverage, so long as those conditions are designed to avoid duplication of insurance or other benefits. *Jackson v. Farm Bureau Mut. Ins. Co.*, 528 N.W.2d 516, 517 (Iowa 1995) (citing *Poehls v. Guaranty Nat'l Ins. Co.*, 436 N.W.2d 62, 65 (Iowa 1989)). That sentence provides: "[Uninsurance coverage] may include terms, exclusions, limitations, conditions, and offsets which are designed to avoid duplication of insurance or other benefits." Iowa Code § 516A.2.

■ In construing section 516A.2 as part of an insurance policy on previous occasions, we have recognized the section contains two requirements for a valid or enforceable off-

set from coverage: (1) the payment or payments which are the object of the off-set must be "insurance or other benefits" and (2) the off-set must "avoid duplication." *McClure v. Employers Mut. Cas. Co.*, 238 N.W.2d 321, 328 (Iowa 1976) (*McClure I* ). This court will, therefore, uphold Chrysler's set-off of Gentry's social security disability benefits provided *McClure I* 's criteria are satisfied.

III. *Analysis of validity of Chrysler's disability set-off clause.* In order to resolve the issue presented in this case we must answer two questions: (1) whether the social security disability payments Gentry has received and will receive are "insurance or other benefits;" and (2) whether Chrysler's offset from its uninsured motorist coverage of the social security disability payments Gentry has received and will receive will "avoid duplication." *Id.*

■ A. *Social security disability payments are benefits within the scope of section 516A.2.* The Iowa legislature has not defined "insurance or other benefits." *See* Iowa Code § 516A.2. Also, guidance from other courts is generally lacking in this area because only one reported decision has considered the issue. *See Barnett v. American Family Mut. Ins. Co.*, 843 P.2d 1302 (Colo. 1993). Relying then on principles of statutory construction and interpretation, *see Mewes v. State Farm Automobile Insurance Co.*, 530 N.W.2d 718, 722 (Iowa 1995), two primary reasons persuade us that the phrase "insurance or other benefits" in section 516A.2 encompasses social security disability benefits, and therefore that Chrysler's policy provision allowing for an offset for disability benefits is enforceable.

One reason persuading us that Chrysler may deduct social security disability benefits from its uninsurance coverage limit is our holding in *McClure I*, 238 N.W.2d at 329. There we held "that the words 'insurance or other benefits' in the second sentence of [section] 516A.2 encompass [workers'] compensa-

---

**3.** Because plaintiff's accident occurred in 1991, we construe section 516A.2 as it appeared in the 1991 Iowa Code. Although other decisions relied on in this opinion are construing section 516A.2 as it appears in the 1993 Iowa Code and the legislature has added provisions to section 516A.2 in the 1993 Iowa Code, this distinction does not affect our analysis because neither the language nor the context of the second sentence of section 516A.2 is different in the two Codes.

tion" benefits. *Id.* We reasoned that the second sentence of section 516A.2, read in light of section 516A.1, requiring insurers to make uninsured and underinsured motorist coverage available to all insureds, constituted a manifestation of legislative intent that workers' compensation benefits may be deducted from uninsured motorist insurance. *Id.* at 328–29.

We find no reasonable basis to distinguish this rationale in support of the deduction of workers' compensation benefits from the deduction of social security disability benefits. Like the Iowa Workers' Compensation Act, Iowa Code chapter 85, the federal Social Security Act, *see generally* 42 U.S.C. sections 402, 414, 420, 422–425 (1988) (disability sections), is liberally construed in favor of the claimant. 70A Am.Jur.2d *Social Security & Medicare* § 5, at 50 (1987). Liberal construction must not, however, equate to duplication of statutorily mandated governmental benefits. Such duplicity of benefits would amount to a windfall and would unnecessarily increase the overall burden on employers and taxpayers. Consistent with this theory, the social security disability legislation provides the amount of benefits a disabled claimant can receive under the Act is to be off-set by the amount of workers' compensation benefits, if any, received by the claimant. *Id.* § 236, at 243 (citing 42 U.S.C. § 424a(a)(2)(A) (1988)).

In addition, social security disability benefits are similar to workers' compensation benefits in that neither purport to compensate the injured person for tort damages but rather provide the injured person with statutory benefits. Also, social security disability and workers' compensation benefits have a common purpose of providing a claimant compensation when his or her earning capacity has been temporarily or permanently impaired.

With such similarities between the two payments, *McClure I's* holding, that the deduction of workers' compensation payments is consistent with section 516A.2, clearly supports our conclusion here that the deduction of social security disability payments is likewise consistent with the statute's intent.

We are further persuaded that our conclusion is correct by the fact that we have traditionally taken a narrow coverage view, subtracting from the policy limit any recovery from other sources, in the *uninsured* motorist coverage area. *See McClure v. Northland Ins. Cos.,* 424 N.W.2d 448, 449 (Iowa 1988) (*McClure II* ). Our narrow approach is based on a policy viewpoint that the role of uninsurance coverage is to provide protection up to the minimum statutory limit which the claimant would have received had the claimant been injured by an insured motorist. *Davenport v. Aid Ins. Co. (Mut.),* 334 N.W.2d 711, 714 (Iowa 1983) (citing *Rogers v. Tennessee Farmers Mut. Ins. Co.,* 620 S.W.2d 476, 479 (Tenn.1981)). Following this approach, allowing provisions operating to reduce uninsured motorist coverage where other benefits are available to the insured arising from the accident causing the loss is appropriate as long as such provisions do not operate to deny payments to an insured of less than the statutory minimum. *Davenport,* 334 N.W.2d at 714 (citing *Terry v. Aetna Cas. & Sur. Co.,* 510 S.W.2d 509, 513 (Tenn.1974)); *see* Iowa Code § 321A.1(10) (stating minimum statutory liability insurance limits are $20,000 per person and $40,000 per accident). Construing section 516A.2 as authorizing the deduction from uninsurance coverage of social security disability benefits will not leave Gentry without the statutory minimum amount of coverage and thus is consistent with this narrow coverage approach. *Compare McClure II,* 424 N.W.2d at 449–50 (stating purpose of *underinsurance* coverage is to provide full compensation to the injured party to the extent of damages sustained, and holding that insurer cannot deduct workers' compensation benefits from underinsurance policy limit).

Gentry attempts to avoid this conclusion by relying on out-of-state case law. Gentry urges us to follow the only other jurisdiction to consider the issue and to hold that insurance policy provisions requiring the deduction of social security benefits from the policy limit are unenforceable and void as against public policy. *See Barnett,* 843 P.2d at 1304. We cannot accept plaintiff's invitation to follow the Colorado court in *Barnett* because of

two major differences between Colorado and Iowa uninsured motorist law.

First, the present case involves *uninsurance* coverage regarding which we have adopted a narrow coverage view, whereas *Barnett* involved *underinsurance* coverage regarding which the Colorado court adopted a broad coverage view. Indeed, the basis for the *Barnett* court's holding was that a clause allowing the insurer to set-off social security disability benefits "violate[d] the General Assembly's intention that UM/UIM coverage 'provide an insured with benefits to the extent necessary to recover for loss caused by a negligent and financially irresponsible motorist, subject to policy limits.' " *Id.* at 1305. As we have stated, the goal of uninsurance motorist coverage as manifested by the Iowa legislature is not full compensation but statutory minimum compensation. *Davenport,* 334 N.W.2d at 714.

Second, we decline to follow the Colorado court due to distinct differences between Iowa and Colorado statutory law. The Iowa legislature has uniquely included the second sentence in section 516A.2, which authorizes policy clauses that eliminate duplication of insurance or other benefits in various ways. *McClure I,* 238 N.W.2d at 325. In holding deduction of social security disability benefits void as against public policy in *Barnett,* the Colorado court was not construing such a statute authorizing policy exclusions because Colorado does not have a comparable statute. *See* Colo.Rev.Stat. § 10–4–609 (1994). On the contrary, the Colorado court was relying on a statement of the Colorado general assembly's legislative intent to provide full compensation to the extent of policy limits. *See Barnett,* 843 P.2d at 1307 (quoting Colo. Rev.Stat. § 10–4–320 (1973) expressing the legislature's intent to provide "protection against the financial loss caused by negligent financially irresponsible motorists."). Accordingly, Colorado's uninsured motorist law in general and *Barnett* in particular are not persuasive authority in Iowa. *Compare Davenport,* 334 N.W.2d at 714 (stating Tennessee case law is persuasive authority in Iowa on the subject because Tennessee has an uninsured motorist statute similar to Iowa Code section 516A.2).

■ B. *Section 516A.2's duplication requirement.* Having concluded that the social security disability set-off provision in Chrysler's uninsurance policy is enforceable does not end the inquiry. Section 516A.2 not only requires that any reduction in the policy limit be for "insurance or other benefits," it also requires that the reduction "avoid duplication."

The district court did not address this second sub-issue but simply concluded that Chrysler is entitled to a credit for the social security benefits plaintiff Gentry has received and will receive. Yet Gentry argues persuasively on appeal that Chrysler should not receive a reduction in its uninsured motorist policy limit for any disability benefits which are not attributable to the accident. Specifically, Gentry argues that, according to the social security administration determination, only a portion of his disability is due to the injuries he received from the automobile accident of February 1, 1991. The secondary, prior injury contributing to Gentry's disability award for social security purposes is coronary artery disease.

We agree with Gentry and conclude that Chrysler is only entitled to a credit for those social security disability benefits which are attributable to the February 1, 1991 automobile accident because deduction of only those benefits will "avoid duplication" as contemplated by Iowa Code section 516A.2. *See Lindahl v. Howe,* 345 N.W.2d 548, 551 (Iowa 1984) (concluding a policy exclusion is invalid when no duplication of coverage is shown to exist). Because the district court did not address this matter, we must remand to that court for a determination of which benefits, if any, are duplicative and thus a proper deduction for Chrysler from its uninsured liability coverage.

IV. *Disposition.* In light of Iowa statutory law and our construction of uninsured motorist coverage, we conclude that policy provisions requiring disability benefits to be deducted from the uninsurance policy limit are enforceable under Iowa Code section 516A.2. Also, we modify and affirm the district court's ruling and allow Chrysler to credit against plaintiff's uninsurance policy coverage, the plaintiff's social security dis-

ability benefits attributable to the accident of February 1, 1991. We remand for a determination, consistent with this opinion, as to which social security disability benefits, if any, the plaintiff has received and will receive in the future that are duplicative of the uninsured motorist coverage, as required by section 516A.2.

**AFFIRMED, AS MODIFIED, AND REMANDED.**