FORT MADISON BANK & TRUST COM-
PANY, As Administrator of the Estate
of Berta Boyd, Deceased, Appellant,

v.

FARM BUREAU MUTUAL INSURANCE
COMPANY, Appellee,

and

George L. NORMAN, As Administrator
of the Estate of David Boyd,
Deceased, Defendant.

No. 94–0576.

Supreme Court of Iowa.

Feb. 14, 1996.

Rehearing Denied March 8, 1996.

Robert N. Johnson, III, of Saunders, Humphrey, Johnson & Hoyer, Fort Madison, for appellant.

James A. Pugh & David A. McNeill of Morain, Burlingame, Pugh & Koop, West Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

McGIVERIN, Chief Justice.

This case involves a dispute over possible offsets to a claim for uninsured motorist benefits. The district court allowed the offsets. The court of appeals did not and ordered the benefits paid to the claimant. We agree with the court of appeals, in part, and reverse the district court.

I. *Background facts and proceedings.* On July 8, 1990, David and Berta Boyd, husband and wife, were killed in a one-car accident. Both died intestate. David was the driver of the vehicle and was intoxicated at the time of the accident. David and Berta had been drinking alcohol on the evening of the accident at a tavern named Tin Shed. They were survived by one minor child, Jazzber Boyd.[1]

At the time of the accident, the automobile was owned by Berta and was insured through a Farm Bureau Mutual Insurance Company automobile insurance policy issued to her husband, David. Both Berta and Jazzber were insureds under the policy. The insurance policy provided uninsured motorist

(UM) coverage of $100,000. The policy contained the following setoff clause:

**Our Right to Recover Our Payments**

. . . .

(b) Under ... uninsured motor vehicle coverages:

(1) We have the right to recover our payments from the proceeds of any settlement or judgment the injured person obtains from any party liable for the bodily injury.

To date, Farm Bureau has not paid out any UM benefits to any insured under David's policy.

In July 1991, Jazzber's conservator, Fort Madison Bank, entered into a structured settlement with Tin Shed, the "dramshop," *see* Iowa Code § 123.92 (1995), which sold and served David alcoholic beverages while he was intoxicated immediately prior to the fatal automobile accident. The settlement had a present value at the time of settlement of $50,000. The settlement arose out of Jazzber's damages for loss of parental consortium as a result of his parents' death in the one-car accident.

In September 1991, after the fatal automobile accident, a petition was filed by Jazzber Boyd through his guardian, Vera Boyd, and his conservator, Fort Madison Bank, and by the administrator of Berta Boyd's estate, Fort Madison Bank, against defendant Farm Bureau and David Boyd's estate. The petition alleged a claim for the wrongful death of Berta on behalf of Berta's estate, a claim for loss of parental consortium on behalf of minor child Jazzber due to the death of his mother Berta, and a claim for contract damages based on the automobile insurance policy issued by Farm Bureau to David Boyd.

After ruling on preliminary motions, the wrongful death/loss of parental consortium petition against Farm Bureau and David Boyd's estate was reduced to one claim: Berta's estate sought $100,000 in uninsured motorist benefits from Farm Bureau for damages sustained as a result of the automobile

---

1. Vera Boyd, David's mother, was appointed guardian of Jazzber after the fatal automobile accident involving Jazzber's parents. Fort Madison Bank & Trust Company was named Jazzber's conservator and also administrator of Berta's estate. George Norman was named administrator of David's estate and is not involved in this appeal.

accident in which Berta and David lost their lives.[2] As affirmative defenses, Farm Bureau asserted certain offsets against its UM liability due to other alleged recoveries made by plaintiffs.

Prior to the case being submitted to the district court for resolution of the uninsurance offset issues, the parties stipulated that David's estate was legally liable for Berta's injuries and that David was an uninsured motorist for the purposes of the claim asserted by Berta's estate.[3] Accordingly, the parties agreed Berta's estate was entitled to the $100,000 in uninsured motorist benefits subject to any applicable offsets. In addition, the parties stipulated Berta's estate suffered damages of $300,000 as a result of Berta's wrongful death.

In May 1992, the personal representative of David's estate disbursed $49,000 of the assets of the estate to the conservator of Jazzber, the sole beneficiary of David's estate, pursuant to the laws of intestate succession. At the time of trial, there was approximately $1,250 remaining in David's estate.

In December 1993, the present case was submitted to the district court on stipulated facts for resolution of the disputed uninsurance offset issues; no additional evidence was considered by the court. The court held Farm Bureau could offset from its UM liability to Berta's estate the Tin Shed structured settlement proceeds, the monies transferred to Jazzber's conservator from David's estate prior to trial, and the monies remaining in David's estate at the time of trial.

The district court concluded Berta's estate had received in substance a total of $100,-250.35 from the responsible parties and that this amount offset Farm Bureau's entire liability under the uninsured motor vehicle provision of David's automobile insurance policy. The court, in a conclusion of law, rejected Berta's estate's contention that the transfer of $49,000 to Jazzber's conservator from the administrator of David's estate was by intestate succession and thus not compensation for a tort within the meaning of the uninsured motorist law. According to the court: "[The transfer] was first and foremost money owed by a tortfeasor. Under the insurance contract it should make no difference that the tortfeasor is the claimant's parent."

In its decision, the district court also entered judgment against David's estate and in favor of Berta's estate for $300,000 and dismissed the action by Berta's estate against Farm Bureau, finding it owed Berta's estate nothing because the applicable offsets equaled or exceeded the applicable UM coverage limits.

Berta's estate appealed the portion of the district court's ruling allowing Farm Bureau to make the offsets against its UM liability. We transferred Berta's estate's appeal to the court of appeals. *See* Iowa Code § 602.4102(2). That court reversed the district court's judgment, holding Farm Bureau was not entitled to an offset for either the Tin Shed structured settlement proceeds or the amount Berta's estate would recover from David's estate pursuant to the $300,000 judgment. The court did not rule on whether the $49,000 probate distribution that Jazzber's conservator received from David's estate could be offset by Farm Bureau against

2. As stated earlier, Jazzber, the surviving minor child of David and Berta, was originally a named plaintiff in the wrongful death/loss of parental consortium case that is the basis of this present appeal. In February 1993, however, in response to Farm Bureau's motion to strike Jazzber as a party plaintiff, the district court struck Jazzber as a plaintiff and ordered that all claims must be prosecuted by his late mother Berta's estate. *See Madison v. Colby*, 348 N.W.2d 202, 209 (Iowa 1984). In October 1993, Berta's estate voluntarily dismissed "Jazzber's claim" from the present case.

3. Even though David was a named insured in the Farm Bureau automobile insurance policy, for purposes of the present UM case, he was an "uninsured" motorist at the time of the accident. This is because the policy at issue contained an amendatory endorsement stating there is no liability coverage for any bodily injury to any insured or any member of an insured's family residing in the insured's household. Such an exclusion is commonly referred to as a "family exclusion" clause.

Because David was uninsured and was legally responsible for Berta's damages, Berta was able

its UM liability to Berta's estate.[4]

We granted Farm Bureau's application for further review. *See id.* § 602.4102(4). We review the district court's legal conclusions for correction of errors at law. Iowa R.App.P. 4.

II. *Claimed offsets to uninsured motorist liability.* This appeal is from the district court's denial of uninsured motorist benefits as the result of a one-car accident that killed David and Berta Boyd. The court denied UM benefits to Berta's estate on her wrongful death claim and relieved the insurer, Farm Bureau, from any payment obligation. The court did so because, in its view, the $100,000 in uninsured motorist benefits applicable to the claim should be completely offset by prior recoveries by the Boyds' sole heir and minor son, Jazzber, and monies remaining in David's estate at the time of trial.

Berta's estate's claim for UM benefits arises under an automobile insurance contract with Farm Bureau under which Berta was an insured. As required by statute, the policy contained a provision for uninsured motorist benefits. *See* Iowa Code § 516A.1. Iowa Code chapter 516A, which mandates that insurers provide their insureds minimum coverage, unless waived, against underinsured and uninsured motorists, was enacted to protect the insurance consumer, not the policy vendor. *Rodman v. State Farm Mut. Auto. Ins. Co.,* 208 N.W.2d 903, 909 (Iowa 1973). Iowa Code section 516A.2(1), the statute authorizing Farm Bureau's setoff clause and on which Farm Bureau relies, appears, however, to have been enacted for the protection of the insurer in certain situations. The statute provides that insurers providing UM coverage consistent with the provisions of chapter 516A "may include [in the coverage] terms, exclusions, limitations, conditions, and *offsets* which are designed to avoid duplication of insurance or other benefits." *See* Iowa Code § 516A.2(1) (emphasis added).

Relying on its setoff clause set out above and the reasons behind section 516A.2(1), Farm Bureau seeks to offset, from its admitted $100,000 UM liability to Berta's estate, monies received by Jazzber's conservator in a settlement with the dramshop, Tin Shed, and through probate distribution of David's estate. Farm Bureau also seeks to offset against its UM liability any monies Berta's estate receives from David's estate pursuant to the $300,000 judgment entered against David's estate by the district court.

We have previously approved of UM offsets prior to the insured receiving full compensation under the terms of the insurance contract if the offsets will avoid duplication of insurance or other benefits. *See Gentry v. Wise,* 537 N.W.2d 732, 735 (Iowa 1995); *Davenport v. Aid Ins. Co. (Mut.),* 334 N.W.2d 711, 715 (Iowa 1983). This, of course, assumes the monies sought to be offset by the insurer were received by the party or entity seeking to recover UM benefits. In this case, Berta's estate is the only party or entity currently seeking UM benefits.

Farm Bureau's setoff theory is essentially that it is entitled to offsets under the policy, as to the settlement proceeds and the probate disbursement received by Jazzber's conservator, because both Jazzber and Berta were insureds and both were subject to the same $100,000 uninsured policy limit and, therefore, it does not matter which insured settled with Tin Shed or which insured received money from a tortfeasor. Additionally, Farm Bureau seeks to offset any monies Berta's estate receives from David's estate pursuant to the $300,000 judgment on the theory that the policy authorizes the offset and such an offset would not amount to Farm Bureau subrogating against its own insured.

The only issues in substance are (1) whether the district court erred by offsetting against Farm Bureau's UM liability the $50,000 Tin Shed structured settlement proceeds

---

to assert a claim against the uninsured motorist provision of the policy.

4. For purposes of clarification, it appears the court of appeals did not view the $49,000 probate disbursement from David's estate to Jazzber's conservator to be an amount separate from the amounts recoverable by Berta's estate

pursuant to the $300,000 district court judgment. Because we believe the $49,000 probate disbursement received by Jazzber's conservator was separate from the $300,000 David's estate owes Berta's estate, we view whether Farm Bureau can offset either of these amounts to be two separate issues.

and the $49,000 probate disbursement Jazzber's conservator received from David's estate and the balance remaining in David's estate at the time of trial, and (2) whether Farm Bureau is entitled to an offset for any monies Berta's estate receives from David's estate pursuant to the $300,000 judgment.

■ 1. *Offset of dramshop settlement proceeds and probate disbursement.* Farm Bureau seeks to offset from its UM liability any monies Jazzber received, through his conservator, in the Tin Shed settlement and through the probate disbursement from his father David's estate. We disagree with Farm Bureau's position and do not believe an offset is appropriate as to these monies.

First, we conclude Jazzber, who sought loss of parental consortium damages in a dramshop action against Tin Shed and received monies in probate from his father David's estate, is a separate legal entity from his late mother Berta's estate which is seeking UM benefits. *See McClure v. Employers Mut. Cas. Co.,* 238 N.W.2d 321, 329–30 (Iowa 1976) (stating even though a widow and her late husband's administrator were the same person, they were two distinct entities for uninsured motorist offset purposes). In *Madison v. Colby,* 348 N.W.2d at 209, we made clear that "all loss of consortium recoveries ... pursuant to common law ... go to the person who incurred the loss," in this case Jazzber. *See Audubon–Exira Ready Mix, Inc. v. Illinois Cent. Gulf R.R.,* 335 N.W.2d 148, 152 (Iowa 1983) (stating amounts recovered by a parent's administrator for a child's loss of parental consortium is the child's property).

■ Therefore, we conclude the Tin Shed structured settlement is Jazzber's property and not the property of Berta's estate. *See Gail v. Clark,* 410 N.W.2d 662, 668–69 (Iowa 1987). Likewise, any probate disbursements from David's estate to Jazzber's conservator

are the sole property of Jazzber.[5] The $100,000 in UM benefits sought by Berta's estate, on the other hand, will be paid to and be the sole property of Berta's estate and not Jazzber or his conservator. In the end, Berta's estate, the sole party presently seeking UM benefits, recovered no proceeds from the Tin Shed settlement or from the probate disbursement of David's estate to Jazzber's conservator.[6]

In addition, we conclude Farm Bureau is not entitled to an offset against its unpaid UM liability for the settlement proceeds and the probate disbursement received by Jazzber's conservator because Berta's estate, the sole insured currently seeking UM benefits, will not experience "double recovery" should Farm Bureau pay her estate benefits as a result of her wrongful death at the hands of an uninsured motorist. *See* Iowa Code § 516A.2(1); *Gentry,* 537 N.W.2d at 737; *Madison,* 348 N.W.2d at 209. While the sole insured currently seeking UM benefits is Berta's estate, the sole beneficiary of the Tin Shed settlement and the probate disbursement sought to be offset by Farm Bureau was Jazzber. Although not to Farm Bureau's liking, the facts show Berta's estate simply was not a beneficiary of either the Tin Shed settlement or the probate disbursement.

Jazzber's conservator's settlement with Tin Shed was made to compensate Jazzber for loss of services of his parents, not to compensate Berta's estate for wrongful death damages. The structured settlement between Jazzber's conservator and Tin Shed was not made payable to Berta's estate and neither Berta's estate nor Farm Bureau were parties to the settlement. Likewise, the probate disbursement from David's estate to Jazzber's conservator was made for the benefit of Jazzber and pursuant to the laws of intestate succession. In essence, Berta's estate had

5. The parties stipulated that Farm Bureau neither filed a claim in David's estate nor filed a cross-claim in this suit against David's estate asserting its subrogation rights to recover any payments made to Berta's estate.

6. At oral argument, Farm Bureau relied on a 1987 *under*insured motorist case not cited in its appeal brief. *See Lepic v. Iowa Mut. Ins. Co.,* 402

N.W.2d 758 (Iowa 1987). As the *Lepic* case involved interpretation of policy language not at issue in the present case and did not involve UM offset issues, we find the case does not aid Farm Bureau's argument that it is entitled to offset monies obtained by one insured, Jazzber, against its UM liability to a different insured, Berta's estate.

no interest in the settlement or its proceeds or the probate disbursement and, therefore, there will be no double recovery for Berta's estate as to these amounts. *See McClure,* 238 N.W.2d at 329.

In sum, we conclude the offset terms of the UM provision are not enforceable by Farm Bureau as to proceeds Jazzber received, through his conservator, from either the Tin Shed settlement or the probate disbursement from David's estate.

■ *2. Offset of monies recoverable pursuant to the $300,000 judgment.* Farm Bureau also seeks to offset from its UM liability any monies Berta's estate receives from David's estate pursuant to the $300,000 judgment entered by the district court against David's estate.

We agree with Farm Bureau on this issue and believe this offset is plainly authorized under the terms of the insurance policy's UM setoff provision quoted above. If Berta's estate recovers monies from David's estate pursuant to the $300,000 judgment, Berta's estate should not also be permitted to recover UM benefits in an equal amount from Farm Bureau. Such a recovery would amount to double recovery, would be contrary to the insurance policy's offset clause, and would be against public policy. *See* Iowa Code § 516A.2(1).

Berta's estate argues, and the court of appeals held, that allowing this type of an offset against any recovery by Berta's estate against David's estate pursuant to the $300,000 judgment would amount to Farm Bureau subrogating against its own insured. We agree that David is a named insured for general coverage purposes. David's estate, however, is legally "uninsured" for the purposes of Berta's estate's UM claim. We conclude, therefore, that Farm Bureau will not be subrogating against its own insured should we permit such an offset.

Berta's estate presents no authority that requires a contrary conclusion when a named insured is deemed "uninsured" under the facts of a particular claim.

Although Berta's estate correctly states the rule that an insurer is prohibited from recovering by right of subrogation from its own insured, *see Aid Ins. Co. (Mut.) v. United Fire & Cas. Co.,* 445 N.W.2d 767, 771 (Iowa 1989), we believe this rule is inapplicable under the facts of the present case when David's estate has been deemed uninsured for the purposes of resolving Berta's estate's wrongful death claim. The offset language is in the policy provision concerning uninsured motorist claims.

Therefore, we disagree with the conclusion of the court of appeals on this issue. In sum, we conclude the offset terms of the UM provision are enforceable by Farm Bureau as to proceeds Berta's estate receives from David's estate pursuant to the $300,000 judgment entered by the district court against David's estate.

III. *Disposition.* The parties make other contentions in which we find error was not preserved, have no merit, or we need not discuss under our view of the case.

We affirm in part and vacate in part the court of appeals decision. We reverse the district court judgment and remand the case with directions to the district court to enter judgment consistent with this opinion for Berta's estate against Farm Bureau for $100,000, the uninsured motorist coverage under the applicable insurance policy, plus interest as provided by law, less offset for any proceeds Berta's estate receives from David's estate in enforcement of the $300,000 judgment of Berta's estate against David's estate.

Costs on appeal are taxed to Farm Bureau.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

All Justices concur including CARTER, J., who concurs specially.

CARTER, Justice (concurring specially).

I concur in the opinion of the court. I write separately to state that, although the so-called probate disbursement from David's estate to Jazzber's conservator is not in itself a payment that would reduce the uninsured motorist benefits owed Berta's estate, it may have been an improper depletion of the as-

sets in David's estate in the face of a potential wrongful-death claim by Berta.

The assets transferred to Jazzber, if left in David's estate, would have been available to pay Berta's wrongful-death claim. That payment, if made, *would* reduce the uninsured motorist benefits owed to Berta's estate. These issues have not been presented on this appeal, and based on the record at the time the appeal was taken, were not ripe for decision.